**UNITED STATES et al. v. NATIONAL CASUALTY CO.**

**Civ. A. No. 1560.**

District Court, W. D. Louisiana,
Lake Charles Division.

May 18, 1946.

276

John F. Sonnett, Asst. Atty. Gen., Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., Robert Mandel, of Washington, D. C., Rawlings Ragland, Acting Head, Claims Division, of Washington, D. C., and Joseph M. Friedman, Sp. Asst. to Atty. Gen., for plaintiff.

R. Emmet Kerrigan of Deutsch, Kerrigan & Stiles, all of New Orleans, La., for defendant.

PORTERIE, District Judge.

This action is brought by the United States of America and some of its departments on three fidelity bonds issued by defendant. Defendant has filed a motion to dismiss for failure to state a claim on which relief can be granted, motions to strike and a motion for a bill of particulars or a more definite statement of the nature of the claim.

The complaint alleges that three bonds were issued. The first was a blanket position bond for the period from February 10, 1942, to December 1, 1943. The second was a blanket bond from December 1, 1943, to April 25, 1944. The third was a blanket bond from April 25, 1944, to July 25, 1944.

Blanket position fidelity bond No. N-53192 provided as taken from Paragraph 4 of the complaint as follows: "* * * in consideration of the payment of premiums as therein provided, the defendant covenanted and agreed to make reimbursement of any loss of money or other personal property, including inventory shortages, resulting from dishonest or fraudulent acts of any employee or employees of said Camp Exchange. Said bond covered losses up to the amount of twenty-five hundred dollars ($2500) resulting from dishonest or *fraudulent acts of each employee specifically identified, and twenty-five hundred dollars ($2500) for all losses resulting from the dishonesty of employees not identified.* Riders which, by agreement of the parties, were attached to and became a part of said bond, provided additional coverage, in varying amounts, for losses due to dishonest or fraudulent acts of persons occupying certain positions named in said riders." (Italics ours.)

Primary commercial blanket bond No. N-56869 provided as taken from Paragraph 5 of the complaint as follows: "* * * the defendant covenanted and agreed to make reimbursement of any loss of money or other personal property, including inventory shortages, resulting from dishonest or

fraudulent acts of any employee or employees of said Camp Exchange. Said bond covered losses up to the amount of fifty thousand dollars ($50,000). By a rider dated December 22, 1943, which by agreement of the parties was attached to and became a part of said bond, it was agreed that the report of a Board of Officers of the United States Army, duly appointed as in said rider specified, shoud be binding upon both parties, in the settlement of any claim or claims under the bond."

Primary commercial blanket bond No. 57632 had identical provisions as the afore-described bond, except as to its period of effect, which was from April 25, 1944, to July 25, 1944.

Then, we should copy the whole of Paragraphs 7 and 8, and the main part of Paragraph 9, of the complaint:

"(7) For many months prior to September 1942, and continuing until about June 1944, money and property of plaintiff Camp Exchange were stolen and/or embezzled by employees thereof. A few of said thefts were reported to the Provost Marshal of Camp Polk or other law-enforcement officers, and to defendant, but the true amount and number of said thefts and embezzlements was known only by certain executives of said Camp Exchange. Said executives conspired amongst themselves, for their own dishonest and wrongful purposes, to conceal the amount and number of said thefts and embezzlements. Pursuant to said conspiracy, said executives obstructed the apprehension of dishonest employees, abstracted documents from the Camp Exchange files, changed the dates and/or amounts of other such documents, made false entries in the Camp Exchange books, and prepared and issued false reports as to the inventory and financial condition of said Camp Exchange. The persons known to have participated in said conspiracy are (here are given the names of five executives.) —————, Major, AUS, Exchange Officer, either participated in said conspiracy or committed wilful derelictions of duty which furthered it.

"(8) The above-described conspiracy succeeded in making inventory losses of said Camp Exchange appear to be less than one per cent (1%) of gross sales. Had it been known to the Exchange Council or to higher authority in the United States Army that inventory losses in fact exceeded 1% of gross sales, War Department regulations and policy would have led to a detailed audit which would have revealed the occurrence of the above-described thefts and embezzlements and the adoption of preventive measures. The above-described conspiracy by executives of said Camp Exchange prevented the taking of proper and effective action to combat said thefts and embezzlements.

"(9) War Department officials not involved in the above-described conspiracy first began to suspect its existence in the latter part of April 1944, and thereafter an audit and an investigation was ordered by the commanding officer of Camp Polk. By the first week of June 1944 definite evidence of the existence of the above-described conspiracy had been found and, although the preliminary audit indicating the amount involved had not yet been completed, notice was given to defendant by a letter sent on or about and under date of June 5, 1944."

The trial of this case is to be with jury. Therefore, we should exclude facts from the trial at this time, if the principles of law clearly and fully exclude them.

■ Under blanket position fidelity bond No. N-53192 effective February 10, 1942, to December 1, 1943, we rule that complainant must specifically be given the names of the employees of the Camp Exchange who were involved in the "dishonest or fraudulent acts", or else liability under the bond to that degree must be excluded from the case as a matter of law. However, evidence to show over-all loss of as much as $2,500 in order that complainant may recover that minimum amount under the contract, will be permitted without the loss being specifically connected with or identified to a certain named person, or persons.

■ Under the other two bonds, losses through dishonest or fraudulent acts of any employee or employees of the Camp Exchange will be permitted, though proof as to which particular employee committed the act will not be necessary. Recovery under each one of these two contracts, however, will be limited to $50,000, and proof will be

limited to losses occurring within their respective effectual dates. See First National Bank of Nashville v. National Surety Co., 6 Cir., 130 F. 401, 66 L.R.A. 777.

So, the motion to dismiss the complaint is overruled. 17 C.J.S., Contracts, § 533, page 1154; Miller v. Kline, 108 La. 31, 32 So. 197.

The several motions to strike are overruled, and of the several bills of particulars requested by the defendant, one is granted in consonance with this opinion, to-wit: that under Bond No. N-53192 the names of each and every employee because of whose dishonest or fraudulent acts recovery is sought, must be furnished defendant by the plaintiff; of course, these losses to have been between the dates of February 10, 1942, and December 1, 1943.

We glean from the complaint that the executives who conspired to conceal were not in connivance with the thieving employees; so it follows, as above stated, that the thefts or embezzlements must be connected with certain specific employees.

Furthermore, we rule that the defendant must give the plaintiff the date or dates on which the executives are alleged to have conspired among themselves to conceal the amount and number of alleged thefts or embezzlements, and also furnish the defendant with a copy of the letter of June 5, 1944, allegedly sent the defendant by plaintiff. Items (c) and (e) of motion.

The other five items of the bill of particulars are denied, to-wit:

"(a) By stating the number of alleged thefts and/or embezzlements, the dates on which they are alleged to have occurred, the amount of money and the amount, kind and character of property involved in each alleged theft and/or embezzlement, and the name or names of the employee or employees who plaintiffs claim were involved in each of the alleged thefts and/or embezzlements.

"(b) By stating the thefts which are alleged to have been reported to defendant, giving the dates on which and the manner in which said reports are alleged to have been made."

"(d) By stating the nature of the alleged dishonest and wrongful purposes of the executives in entering into the alleged conspiracy."

"(f) By stating the nature and character of the alleged inventory losses.

"(g) By stating how and why the alleged conspiracy caused the alleged inventory losses."

Plaintiff has furnished all of the records and the reports of its investigations from which defendant can just as readily gather the information sought as the plaintiff.

A judgment, drafted for the Court by the parties, will be signed in accordance with the above opinion.